Certiorari to review a judgment of the Court of Claims deciding that the plaintiff was entitled to recover on his petition for refund of income tax.
*752 .The judgment of the Court was affirmed January 3, 1939 (305 U. S. —), the Supreme Court stating:
The question is whether the 15 per centum allowed as a deduction for charitable contributions under Section 23 (n) of the Revenue Act of 1932 is to be calculated on the taxpayer’s net income computed without regard to a capital net loss as to which special provision is made by Section 101 (b).
Section 23 (n) provides that in computing net income there shall be allowed as a deduction from gross income—
“In the case of an individual, contributions or gifts made within the taxable year to or for the use of . . . to an amount which in all the above cases combined does not exceed 15 per centum of the taxpayer’s net income as computed without the benefit of this subsection.”
Respondent in 1932 made charitable contributions to the amount of $3,496. His net income, irrespective of a capital net loss, was determined by the Commissioner to be $94,963.52. Upon that net income the Commissioner assessed the normal tax and surtax at the rates prescribed by Sections 11 and 12. Respondent contended that this was his net income as described in Section 23 (n) and that as his charitable contributions were less than 15 per centum of that amount they were deductible in full in determining his normal tax and surtax. The Commissioner refused to allow the deduction.
The taxpayer had sustained a “capital net loss,” as defined in Section 101 (c) (6), of $154,921.98. The Commissioner ruled that “Since the capital loss of $154,921.98 is in excess of adjusted ordinary net income of $94,963.52 (without contributions) there is no net income against which to make a deduction for contributions.”
Having paid the tax assessed by the Commissioner upon that theory, respondent filed his claim for a refund and on its rejection brought this suit in the Court of Claims. Judgment was rendered in his favor. Because of an asserted conflict with decisions of Circuit • Courts of Appeals and with our ruling in Helvering v. Bliss, 293 U. S. 144, Certiorari was granted.
Discussing “the special treatment” accorded to “capital net gains” and “capital net losses” under Section 101, the Court observed that “the provision for the limitation with respect to a capital net loss under Section 101 (b) (unlike the provision in Section 101 (a) as to a capital net gain) gives no option to the taxpayer” and the “limitation applies equally *753 where there is no capital gain and hence nothing to be deducted from capital losses on that score”; and “in; the instant case there is no question that the limitation does apply and the Commissioner has applied it”; the Court stating:
In such a case the statute directs that a partial tax shall be first computed upon the basis of the “ordinary net income” and at the rates and in the manner provided in Sections 11 and 12. The total tax is then arrived at by deducting 12% per centum of the capital net loss. That loss thus figures in the computation of the total tax only by the allowance of an offset to the specified extent against the tax determined apart from the capital losses. Thus where the limitation is applicable and the offset of 12% per centum of the capital net loss is allowed accordingly, capital losses are not deductible in determining the taxpayer’s net income for the purpose of the normal tax and surtax. And, as in such case there is no capital gain, the “ordinary net income” under Section 101 (b), that is, the net income computed after excluding capital loss and capital deductions, is the only net income upon which a tax is laid.
We have noted that the limitation of Section 101 (b) is not applicable if the tax, computed without regard to that section, would be greater. The latter method of computation brings out the distinction clearly. For in that method the capital net loss is deducted from the ordinary net income in order to arrive at the total net income for the purpose of applying the normal tax and surtax rates. See illustration in Regulations 77, Article 503. But where the limitation of Section 101 (b) governs, because the tax as otherwise computed would not be greater, capital losses are not deducted in determining the net income which is to be taxed, but are used only for the purpose of determining the specified offset against the tax on that net income. 1 d.
The Court held that “Sections 21, 22, and 23 are not.to be construed so as to derogate from the special and explicit provisions of Section 101 (b),” stating:
Under the limitation of that section, as we have seen, the taxpayer is not permitted to deduct capital losses so as to reduce the net income subject to tax and his capital losses enter into the computation of his ultimate tax only through the deduction of 12% per centum of the capital net loss from the tax which is computed upon the net income ascertained irrespective of that loss.
*754 It is in this light that we must decide the particular question here presented as to the meaning of the words “the taxpayer’s net income” in Section 23 (n) providing for a deduction of 15 per centum for charitable contributions. Do these words refer to the taxpayer’s net income which under the statutory scheme is actually subject to tax? Or is that net income, although treated as subsisting for the purpose of being taxed, to be regarded as nonexistent for the purpose of admitting deductions for contributions ? We think that Congress, in the application of the special provision of Section 101 (b) for an offset in case of a capital net loss, intended to make the taxpayer’s net income, ascertained irrespective of that loss, the subject of the tax and that the provision in Section 21 (n) allowing a deduction for charitable contributions is applicable to that taxable net income.
There is nothing to the contrary in our decision in Helvering v. Bliss, supra. In that case there was a capital net gain. The net income of the taxpayer comprehended that net gain as well as his net income otherwise computed. We decided that it was his total net income which was to be regarded as the basis for the allowance under Section 23 (n). We found nothing in Section 101, which in that application prescribed “merely a method for segregating a portion of that net income for taxation at a special rate,” that in any wise) altered the right of the taxpayer to take the deduction in accordance with Section 23 (n). Here, instead of a capital net gain, we have a capital net loss. There is no gam to be added to the taxpayer’s net income otherwise computed, and thus that is the only net income taxable under the statute. To that net income, the provision of Section 23 (n) appropriately applies. We observed in the Bliss case that the exemption of income devoted to charity and the reduction of the rate of tax on capital gains “were liberalizations of the law in the taxpayer’s favor, were begotten from motives of public policy, and are not to be narrowly construed.” That observation is equally pertinent here.
The administrative construction invoked by the Government has not been of a sufficiently consistent character to afford adequate support for its contention.
We conclude that the Commissioner erred in refusing to permit the deduction sought by respondent for his charitable contributions and that the judgment of the Court of Claims should be affirmed.
Mr. Chief Justice Hughes
delivered the opinion of the Court.